Commonwealth *vs.* Mario M. Perez.

No. 08-P-1824.

Plymouth. November 6, 2009. - March 5, 2010.

Present: Cypher, Sikora, & Fecteau, JJ.

*Practice, Criminal,* Motion to suppress, Confrontation of witnesses. *Constitutional Law,* Search and seizure, Confrontation of witnesses. *Search and Seizure,* Expectation of privacy, Curtilage, Probable cause. *Controlled Substances. Evidence,* Consciousness of guilt, Certificate of drug analysis.

A Superior Court judge properly denied a criminal defendant's motion to suppress packages of suspected cocaine found by police after digging in an area of freshly-disturbed earth near the side entrance of a first-floor apartment, where the search was conducted within the curtilage of the apartment, for which the police had a search warrant, and did not exceed the scope of the warrant. [441]

At the trial of an indictment charging trafficking in cocaine between twenty-eight and one hundred grams, the judge did not err in denying the defendant's motion for a required finding of not guilty, where there was ample evidence of constructive possession through the defendant's knowledge of the drugs' presence and his ability and intention to exercise control of the drugs, and where the large quantity of bags of suspected cocaine, packaged in sizes commonly sold on the street, together with items known to be traditional accoutrements of the illegal drug trade, were sufficient evidence of intent to distribute. [441-442]

At the trial of an indictment charging trafficking in cocaine between twenty-eight and one hundred grams, the erroneous admission in evidence of three certificates of drug analysis without testimony by the analyst or the opportunity for the defendant to cross-examine the analyst, in violation of the defendant's right under the Sixth Amendment to the United States Constitution to confront the witnesses against him, required reversal, where, beyond statements that the substances seized "appeared" to be cocaine, there was no opinion testimony, based on objective criteria, offered to support those conclusory observations; where there was no evidence independent of the certificates of the weight of the substances that would have provided the jury with a rule of thumb from which they could determine and add the weights of the packages to verify that they fell within the twenty-eight to one hundred grams of the charged offense; and where the Commonwealth's reliance on the certificates was significant. [442-445] Sikora, J., concurring.

Indictment found and returned in the Superior Court Department on June 25, 2001.

A pretrial motion to suppress evidence was heard by *Charles J. Hely*, J., and the case was tried before *Linda E. Giles*, J.

*David J. Rotondo* for the defendant.

*Audrey Anderson Kachour*, Assistant District Attorney, for the Commonwealth.

CYPHER, J. We are asked in this case to apply the ruling in *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009), to determine whether the erroneous admission of certificates of drug analysis, in the circumstances, was reversible error. We conclude that it was.

The defendant, Mario M. Perez, was convicted by a Superior Court jury in July, 2004, of trafficking in cocaine between twenty-eight and one hundred grams, G. L. c. 94C, § 32E(b)(2).[1] He appeals, claiming that (1) his motion for a required finding of not guilty was improperly denied; (2) his pretrial motion to suppress evidence was improperly denied; and (3) his confrontation rights under the Sixth Amendment to the United States Constitution were violated by the introduction of certificates of drug analysis without the testimony of the analysts, or an opportunity to cross-examine them.

*Background.* On February 23, 2001, Brockton and State police executed a search warrant for the first-floor apartment of a two-family dwelling that had been under surveillance for a few weeks. In anticipation of executing the warrant, several police officers parked across the street from the house; they saw the defendant and a woman park in front of the house and then walk in the front entrance. About ten minutes later, the defendant came through a door on the driveway side of the house, went down the stairs, moved to one side, and bent over. A fence precluded the police from further view of the defendant. Shortly thereafter, the defendant saw the police and fled into the house, throwing something. The order to execute the warrant was given, and the police entered the house. They found the defendant in a bedroom stuffing objects in his mouth, attempting to swallow them.

Turning their attention to the outside area where the defendant had been seen, police discovered a Marlboro cigarette box

---

[1]At trial, the defendant's motion for a required finding of not guilty was allowed on a charge of drug violation in a school zone.

about a dozen feet from the house which appeared to be the object that had been thrown. It contained nine packets of what appeared to be cocaine. Noticing freshly disturbed earth and a dirt-covered spoon in a snow-covered area next to the house, the officers began digging in the soft earth, uncovering foil-covered plastic bags thought to be cocaine.

After a systematic search of the house, police found over $1,700 in cash, two boxes of sandwich bags, a police scanner in operation, 126 clear plastic bags containing a "white rock-like powder," a scale, a pager, and two cellular telephones, among other items and documents.

*Discussion.* 1. *Denial of motion to suppress.* The defendant argues that the motion judge erroneously concluded that the police properly seized the packages of suspected cocaine they found after digging in the area of freshly disturbed earth near the side entrance to the house because that search exceeded the scope of the search warrant.[2] He asserts that area was not within the curtilage of the house. We disagree. That area was about three feet from the stairway to the side door, next to the foundation, and beneath a first-floor window. In addition to its physical proximity to the house, the area was within a relatively enclosed portion of the yard, and its use was apparently limited to occupants of the house. Compare *Commonwealth* v. *Pierre,* 71 Mass. App. Ct. 58, 62 (2008). The observed actions of the defendant indicated that he exercised control of the area.

There is no merit in the defendant's further assertion that he had a privacy interest in burying the drugs. Here, it is apparent that the drugs were secreted to escape detection, and the search conducted within the curtilage was proper. The police were not required to establish independent probable cause for that portion of the search. Compare *Commonwealth* v. *Signorine,* 404 Mass. 400, 405 (1989).

The defendant's motion to suppress was properly denied.

2. *Denial of motion for required finding of not guilty.* We examine the evidence according to the familiar standard of

---

[2] We note that at the suppression hearing there was reference to another motion to suppress the evidence obtained inside the apartment. The Superior Court docket indicates that on February 4, 2002, a motion to suppress was denied by another judge. The defendant has neither called this to our attention nor made any argument concerning it.

*Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). There was ample evidence of constructive possession through the defendant's knowledge of the drugs' presence and his ability and intention to exercise control of the drugs. Compare *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409-410 (1989), and cases cited. The defendant's connection with the house had been observed through surveillance, and on the day of the search, he was seen entering the house and then emerging from the side door; upon seeing the police, he threw a cigarette box containing nine bags of suspected cocaine and fled into the house. A large number of packets of suspected cocaine later were found buried outside only a few feet from the steps to the side door. When police encountered the defendant in the house, he was observed stuffing packets of suspected cocaine in his mouth, attempting to swallow them. Compare *Commonwealth* v. *Rodriguez*, 75 Mass. App. Ct. 235, 244 (2009) (attempt to swallow drugs adds to other evidence of guilt on drug charges). The defendant's attempt to distance himself from these drugs is evidence from which the jury could infer consciousness of guilt. Compare *Commonwealth* v. *Pena*, 40 Mass. App. Ct. 905, 906 (1996). The large quantity of bags of suspected cocaine, packaged in sizes commonly sold on the street, together with items known to be "traditional accoutrements of the illegal drug trade," were sufficient evidence of intent to distribute. Compare *ibid.*, and cases cited.

The defendant's motion for a required finding of not guilty properly was denied.

3. *The certificates of drug analysis.* The defendant states in a single paragraph in his brief that, although he made no objection, the introduction of three certificates of drug analysis in his July, 2004, trial violated his confrontation rights as set forth in *Crawford* v. *Washington*, 541 U.S. 36 (2004). The defendant notes that, during the pendency of his appeal, the United States Supreme Court granted certiorari in *Commonwealth* v. *Melendez-Diaz*, 69 Mass. App. Ct. 1114 (2007), which challenged the admission of certificates of analysis without the testimony of the analyst or an opportunity to cross-examine the analyst. Subsequently, the Supreme Court ruled that "[t]he Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits, and the admission of such evidence

against Melendez-Diaz was error." *Melendez-Diaz* v. *Massachu-setts*, 129 S. Ct. 2527, 2542 (2009).[3]

Although prior to oral argument we invited the parties to submit supplemental memoranda concerning the effect of *Melendez-Diaz* on this case, only the Commonwealth submitted a supplemental memorandum. The Commonwealth asks that we conduct our review under the substantial risk of a miscarriage of justice standard because the defendant did not object to the admission of the certificates at trial. It is not necessary to determine whether the posture of this case requires that we review under the higher standard of harmless beyond a reasonable doubt because we conclude, for the reasons that follow, that the defendant is entitled to relief under either standard.

The Commonwealth bears the burden of proving beyond a reasonable doubt every element of the charged crime of distribution of cocaine, particularly whether the substances were cocaine and their weight. The Commonwealth argues that the nature of the substances was not a live issue at trial and that the defense concentrated on claiming that the evidence was insufficient to show that the defendant possessed the cocaine that had been buried. These arguments are unavailing. The Commonwealth is not relieved of its burden of proving every element of a crime beyond a reasonable doubt either by a defendant's failure to contest an essential element, *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 5 (1986), or by pursuing his particular theory of the case. *Commonwealth* v. *Cowans*, 52 Mass. App. Ct. 811, 821 (2001). *Commonwealth* v. *Muniz*, 456 Mass. 166, 173 n.7 (2010).

Next, the Commonwealth argues that "[p]roof that a substance is a particular drug need not be made by chemical analysis," and that a judge may find that the experience of a police officer "would . . . permit him to give an opinion as to what drug a particular substance was." *Commonwealth* v. *Dawson*, 399 Mass. 465, 467 (1987). While there was no express finding in this case, there was police testimony regarding the appearance of cocaine powder and rock, and its packaging and street-selling prices. However, beyond statements that the substances seized "appeared" to be cocaine, no opinions, based on objective

---

[3]This court recently released a decision on the remand of *Melendez-Diaz*. See *Commonwealth* v. *Melendez-Diaz*, *ante* 229 (2010).

criteria, were offered to support those conclusory observations. Compare *Commonwealth* v. *DePina*, 75 Mass. App. Ct. 842, 852-853 (2009). No field testing was performed.[4] Contrast *Commonwealth* v. *Connolly*, 454 Mass. 808, 831 (2009) (officer who field tested substance was identified and testified). Moreover, there was no evidence independent of the certificates of the weight of the substances. While there was much testimony relating the weight of packages to selling prices, such as "twenties" or "forties," the testimony did not provide the jury with a rule of thumb from which they could determine and add the weights of the 126 packages to verify that they fell within the twenty-eight to one hundred grams of the charged offense. See *Commonwealth* v. *DePina, supra* at 852; *Commonwealth* v. *Rivera, ante* 67, 70 (2009). Also, without some understandable standard of comparison to the avoirdupois system, jurors could not be expected to determine weights in the metric system. Contrast *Commonwealth* v. *Connolly, supra* at 831-832.[5]

Finally, the Commonwealth's reliance on the certificates was significant. The prosecutor referred in closing to those documents.[6] See *Commonwealth* v. *Ware, ante* 53, 58 (2009). The judge instructed the jury that the certificates are prima facie evidence and may be considered along with other evidence if the jury accepted that other evidence, but did not instruct that the jury need not accept the certificates.[7]

Without the certificates, the Commonwealth's evidence falls

---

[4]It is unlikely that the form of packaging is necessarily proof that a substance is a particular drug. It is a fair inference that a counterfeit drug, see G. L. c. 94C, § 32G, would be packaged in conventional ways and probably not be distinguishable by appearance. For cases of prosecution for counterfeit drugs, see *Commonwealth* v. *LaVelle*, 33 Mass. App. Ct. 36 (1992), *S.C.*, 414 Mass. 146 (1993); *Commonwealth* v. *Tofanelli*, 67 Mass. App. Ct. 61, 63 & n.2 (2006).

[5]Much of the police testimony properly was directed at establishing that the packaged small quantities were consistent with intent to distribute rather than personal use. Compare *Commonwealth* v. *Gollman*, 436 Mass. 111, 115-116 (2002).

[6]The three certificates stated the substances tested all contained cocaine. The weights of the three quantities were (1) twenty-one bags, 9.68 grams; (2) nine bags, 3.14 grams; and (3) ninety-six bags, 37.08 grams.

[7]We note that in the charge conference defense counsel complained about the extra emphasis created by the excerpt of G. L. c. 111, § 13, printed at the bottom of each certificate.

far short of its required proof. General Laws c. 111, § 13, as amended through St. 1992, c. 378, provides that the certificate "shall be prima facie evidence of the composition, quality, and the net weight of the narcotic or other drug." In the circumstances of this case, the evidence independent of the certificates was inadequate to avoid a conclusion that there was a substantial risk of a miscarriage of justice.

*Judgment reversed.*

*Verdict set aside.*

SIKORA, J. (concurring). I agree with the result and with the thorough reasoning of the majority with one point of exception. In discussion of the reversal of the trafficking conviction now required by the rule of *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2542 (2009), the majority reasons that there was a substantial risk of a miscarriage of justice. The majority observes that, in the total circumstances of this case, police observation of the seized substances and their packaging was not reliably probative. *Ante* at 443-444. Footnote 4, *ante* at 444, elaborates upon the point. "It is unlikely that the form of packaging is necessarily proof that a substance is a particular drug. It is a fair inference that a counterfeit drug, see G. L. c. 94C, § 32G, would be packaged in conventional ways and probably not be distinguishable by appearance."

I cannot subscribe to the evidentiary hypothesis that packaging characteristic of controlled substances is equally likely to contain counterfeit controlled substances. That equivalence seems to me thoroughly implausible. Rational traffickers will want to remain in business and to make a profit. They will want satisfaction and repetitive trade from their customers. The provision of false merchandise will naturally defeat those purposes, and worse. That deception will disappoint customers, harm the reputation of the dealership, and endanger the well-being of the dealer. For these reasons, I must view as entirely speculative the notion that a characteristic package contains counterfeit drugs rather than the real product. In the absence of specific evidence of counterfeit material, I would permit the jury to consider

characteristic packaging as some evidence of enclosed contra-band. The weight of that information within the total volume of evidence remains for the judgment of the fact finder.