NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

12-P-1909                                        Appeals Court


COMMONWEALTH  vs.  ANDRE DALE.



No. 12-P-1909.

Suffolk.     February 7, 2014. - August 25, 2014.

Present:  Trainor, Katzmann, & Hanlon, JJ.


Indecent Assault and Battery.  Evidence, First complaint,
     Relevancy and materiality, Cross-examination, Photograph.
     Child Abuse.



     Indictment found and returned in the Superior Court
Department on November 17, 2009.

     The case was tried before Patrick F. Brady, J.


     David D. Nielson for the defendant.
     Sarah H. Montgomery, Assistant District Attorney, for the
Commonwealth.


     KATZMANN, J.  A Superior Court jury convicted the defendant

of indecent assault and battery on a child under fourteen years

of age, G. L. c. 265, § 13B, as a lesser included offense of

rape of a child under sixteen years of age, G. L. c. 265, § 23.[1] The principal issue in this appeal is the admissibility of first complaint testimony where the victim has no memory of the complaint. In light of the primary purpose of first complaint evidence, we determine that such testimony is admissible. The defendant also contests the admission of testimony of a subsequent complaint, of testimony pertaining to the victim's bodily functions, and of photographic evidence showing injuries to the victim and her brother. We affirm.

1. Background. We summarize the facts as a jury could reasonably have found, reserving certain details for discussion with the specific issues raised. The series of incidents underlying the conviction began when the victim was seven or eight years old. The incidents occurred when the victim, S.B., and her older brother, M.B., lived with their great aunt, Tina Dale (Tina), and great uncle, Fred Dale (Fred).[2] The defendant is the victim's cousin, the son of Tina and Fred; the victim and her brother referred to him as "Uncle Eddie." During the period of the assaults, the defendant lived in the same house as the

---

[1] The jury acquitted the defendant on two indictments charging indecent assault and battery, G. L. c. 265, § 13B, arising out of separate acts that pertained to the same victim.

[2] S.B. and M.B. moved into the Dales' home when their mother was murdered when S.B. was ten months old.

victim and had a room of his own.  He only stayed in the house
several nights a week.

     The victim testified that, on multiple occasions over the
course of several years, the defendant would sexually assault
her in the Dales' residence.  She testified that the first
incident began when the defendant called her into his room after
she was in bed.  He told her that he was "checking for scars
"[to see] if everything was okay," and he pulled down her
underwear and examined her visually.  Because the victim was
subject to a beating that day from Tina, the victim understood
the defendant to be checking to see whether the beating had
caused any bruises.[3]  After the victim returned to the room in
which she was sleeping, the defendant called her back into his
room, and he told her to lie down on a towel on the floor and to
pull down her underwear.  The defendant pulled up the victim's
pajama gown, opened his robe, and pulled out his penis.  Lying
on top of the victim, he placed his penis against her vagina,
and he "peed on her."[4]  She testified that this pattern was

-----

[3] While the victim and M.B. were growing up, Tina and Fred
physically abused them, using beatings to discipline them for
breaking house rules.  After such beatings, the defendant would
comfort the victim and M.B., giving each of them a hug and
"say[ing] how sorry he was."

[4] The victim testified that at the time of the assault, when
she was approximately seven or eight years old, she believed
that the defendant was "peeing" on her.  After she had grown

repeated over the course of multiple assaults,[5] ending only when the defendant moved out of the house.[6] She testified that the incidents generally occurred in the defendant's room, which was across the hall from the room where she often slept during the time of the assaults. She also testified that a similar incident happened at least once in a different room of the house.

M.B. testified as the first complaint witness. He testified that S.B. had told him -- at the time the incidents were ongoing -- that the defendant had touched her and had "peed on her or something like that." M.B. did not understand the meaning of this brief account as he was seven or eight years old at the time. But M.B. told his sister, in response, "that doesn't sound right." He testified that his sister looked

---

older and received sex education, she came to believe that he had ejaculated on her rather than urinated on her. The victim also testified that he had forced her to suck his nipple during the initial incident, as well as during the subsequent incidents. The jury acquitted the defendant of a charge of indecent assault and battery with respect to the victim sucking the defendant's nipple.

[5] The victim testified in detail to three occasions on which an assault occurred. She also testified that "[i]t would happen pretty much when he was in the house," referring to the times that the defendant slept in the house during the period that he maintained a room in the house.

[6] It is unclear exactly when the defendant moved out of the house, but it was prior to May, 2003, when the victim and her brother themselves moved out.

scared as she told him about the incident.  M.B. did not report the abuse or repeat the conversation to others.  S.B. testified that she did not remember telling M.B. about the assaults during the time that they were occurring.  M.B. also testified to a time, a year or two after her report to him about the assault, when his sister had told him that her urine was bloody and had showed him the bloody results of her urination.  He also testified that, in the aftermath of this disclosure, she repeatedly told him that she experienced a burning sensation when she urinated.[7]

S.B. and M.B. were removed from the Dales' house, in May, 2003, when S.B. was ten and one-half years old, because of physical abuse by the Dales.  Both children testified to repeated abuse by Tina and Fred.  The Commonwealth introduced photographs of M.B. and S.B. showing injuries to support the testimony with respect to physical abuse.  The admission of these photographs, and the Commonwealth's use of them, is contested on appeal.  Shortly after the report of the physical abuse, both siblings were placed in foster care with Orlinda

---

[7] S.B. also testified that she told her brother about the burning sensation during urination and that she showed him her bloody urine.

Jones.[8]  S.B. testified that she told Jones about the sexual abuse four or five years after moving in with her.[9]

2.  Discussion.  a.  First complaint testimony.  The first complaint doctrine permits a judge to admit testimony from the recipient of a victim's initial report of sexual assault. Commonwealth v. King, 445 Mass. 217, 218-219, 241-248 (2005), cert. denied, 546 U.S. 1216 (2006).  See generally Mass. G. Evid. § 413 (2013).  The first complaint witness may also testify to the circumstances surrounding the complaint, including "observations of the complainant during the complaint; the events or conversations that culminated in the complaint; the timing of the complaint; and other relevant conditions that might help a jury assess the [complainant's] veracity . . . ." Commonwealth v. King, supra at 246.  We review a judge's decision to admit first complaint evidence for abuse of discretion.  Commonwealth v. Aviles, 461 Mass. 60, 73 (2011) ("The judge who is evaluating the facts of a particular case is in the best position to determine the scope of admissible evidence, keeping in mind the underlying goals of the first complaint doctrine").

---

[8] S.B. continues to live with Jones as her foster child. M.B. moved out within one year of the placement with Jones and was placed in another foster home.

[9] Jones testified at trial.  She did not testify to S.B.'s report of sexual abuse by the defendant.

i.  Complaint to M.B.  The defendant argues that M.B.'s testimony with respect to S.B.'s initial report to him of the sexual assault is inadmissible because S.B. had no memory of the complaint.  Reviewing the purpose of first complaint testimony, we conclude that a victim need not remember a complaint to allow testimony by a first complaint witness.  The victim's memory of the complaint goes to the weight of the evidence, not to its admissibility.

Together with our understanding of the purpose of the first complaint doctrine, our decision in Commonwealth v. Wallace, 76 Mass. App. Ct. 411 (2010), leads us to conclude that the first complaint testimony is admissible in this case.  In Wallace, a witness testified that the victim -- his sibling, as in our case -- had told him that the defendant had "engaged in inappropriate sex with [the victim]."  Id. at 415.  But the victim only remembered obliquely referring to the encounter in the conversation with his brother, the witness.[10]  Ibid.  This court held that the judge had not abused her discretion in allowing the testimony, concluding there that the discrepancies in the narratives "[went] to the weight of the evidence, not its

---

[10] The victim had previously told a police interviewer that he did not remember any conversation with the witness.  Wallace, supra at 415.  Because the victim later remembered having a conversation with the witness, Wallace is not identical to our case.  We conclude that this is a distinction without a difference with respect to the question of admissibility.

admissibility." Ibid.  The defendant argues that Wallace is not controlling.  He understands the holding of Wallace to be limited to situations where both the victim and the recipient of a complaint remember the complaint, but where their memories differ with respect to the complaint.  We disagree.  We read Wallace to stand for the broader principle that any discrepancy between the memory of a victim and the person receiving a complaint -- including a victim's failure to remember making the complaint -- goes to the weight of the evidence rather than to its admissibility.

This reading is consistent with -- and animates -- the purpose of first complaint testimony set out in Commonwealth v. King, supra.  The main goals of the first complaint doctrine are, first, to refute the stereotype that silence is evidence that the complainant lacks credibility and, second, to provide to the jury as complete an account as possible of how the accusation of sexual assault arose.  Commonwealth v. Aviles, 461 Mass. at 72, citing Commonwealth v. King, supra at 243, 247. The first goal is critical here, where the thrust of the defense was that the victim was not credible, and that she fabricated the allegations in response to outside events at a later time. M.B.'s testimony that his sister reported the abuse to him while the abuse was ongoing rebuts the accusation of fabrication,

particularly given that S.B. could not recall mentioning the sexual abuse to anyone until several years after it occurred.[11]

The fact that S.B. did not remember the report to M.B., and that the first complaint that she remembered making was to Jones, several years later, was before the jury. The discrepancy between M.B.'s testimony and S.B.'s testimony "provided fodder for cross-examination." Commonwealth v. Wallace, supra at 415. The circumstances of the first complaint to M.B. and the subsequent report to Jones are relevant for the jury's determination of the weight of the evidence, particularly in light of the defense's theory of fabrication. But they do not preclude the admission of such evidence.[12]

---

[11] The judge did not abuse his discretion in determining that the content of the report to M.B. qualified as a complaint. See Commonwealth v. Murungu, 450 Mass. 441, 446 (2008) (a report "does not constitute a complaint, when, for example, the victim expresses to that person unhappiness, upset or other such feelings, but does not actually state that she has been sexually assaulted").

[12] In King, the Supreme Judicial Court concluded that "[t]he complainant may likewise testify to the details of the first complaint (i.e., what she told the first complaint witness), as well as why the complaint was made at that particular time" (emphasis added). Commonwealth v. King, supra at 219. Notably, King did not require that the complainant herself testify as to the circumstances or the content of the complaint. First complaint testimony is only admissible to "assist the jury in determining whether to credit the complainant's testimony about the alleged sexual assault." Ibid. But that only requires that the complainant testify about the facts of the underlying assault, not that she testify to the complaint itself.

"The [first] complaint doctrine seeks to balance the interest of a complainant (who, as here, may be still a child) in having her credibility fairly judged on the specific facts of the case rather than unfairly by misguided stereotypical thinking, with that of a defendant in reserving a trial that is free from irrelevant and potentially prejudicial testimony." Commonwealth v. Arana, 453 Mass. 214, 228 (2009).  The trial judge achieved exactly that balance in admitting the testimony from M.B., allowing the jury to judge the credibility of S.B. and her testimony by the "specific facts of the case," ibid., rather than by stereotypes.  Cf. Commonwealth v. King, supra at 244 (citations omitted) ("[T]he doctrine gives the fact finder the maximum amount of information with which to assess the credibility of the . . . complaint evidence as well as the overall credibility of the victim").  We conclude that the judge did not abuse his discretion in admitting first complaint testimony from M.B.

ii.  Complaint to Orlinda Jones.  The defendant argues that the judge impermissibly admitted testimony from the victim with respect to the complaint about the sexual abuse to her foster parent, Jones, several years after moving in with her that

effectively constituted a second first complaint.[13]  We disagree.

We reject the suggestion that this was "back-door first

complaint testimony."  See Commonwealth v. Kebreau, 454 Mass.

287, 288 (2009).  First, the defendant opened the front door to

S.B.'s testimony with respect to the complaint to Jones.

Second, the Commonwealth limited Jones's testimony to subjects

other than the complaint, and S.B.'s testimony did not transform

Jones into a second first complaint witness.

This is not a case like Commonwealth v. Murungu, 450 Mass.

441 (2008), where the judge impermissibly admitted the testimony

of two first complaint witnesses -- the recipient of an initial

complaint and the recipient of a subsequent complaint.  Id. at

447-448.  As discussed supra, the judge here properly admitted

M.B.'s testimony regarding the victim's complaint to him.  S.B.

testified to the circumstances and content of the complaint to

Jones, but only after the defendant opened the door to that

testimony on cross-examination by seeking to establish that

Jones was the first person that the defendant told about the

sexual abuse.  Indeed, when the defendant began this line of

---

[13] The Commonwealth moved in limine to present two first complaint witnesses, M.B. and Jones.  The judge reserved ruling on the motion until trial.  At trial, the Commonwealth did not attempt to present Jones as a first complaint witness. Commonwealth v. Kebreau, 454 Mass. 287 (2009), is inapposite. See id. at 296 (outlining circumstances justifying two first complaint witnesses).

questioning, the trial judge immediately noted that the defendant's questioning of S.B. would open the door to questioning by the prosecution regarding this complaint, and defense counsel confirmed that he wished to do so. There was no impropriety to S.B.'s testimony given that the defendant had already broached the subject of the complaint to Jones. See Commonwealth v. Kebreau, 454 Mass. at 299 ("[T]his testimony was allowed not as first complaint testimony but in response to the defendant's cross-examination of [the witness]"). See also Commonwealth v. Arana, 453 Mass. at 220-221, citing Commonwealth v. Montanez, 439 Mass. 441, 456 (2003) (Sosman, J., concurring) (first complaint doctrine does not bar admission of independently admissible evidence).

b. Other claims. i. Physical symptoms. The defendant argues that the testimony of S.B. and of M.B. about S.B.'s pain during urination and about the blood in her urine was not properly admitted. He argues first that the evidence was not relevant, and second that it was unduly prejudicial because it generated sympathy for the victim.[14] The defendant did not object to these statements at trial, and we review for a

---

[14] While the defendant refers to these statements as inadmissible hearsay in a heading in his brief, the substance of his argument is that the testimony should not have been admitted for reasons unrelated to the hearsay rule.

substantial risk of a miscarriage of justice. See Commonwealth v. Freeman, 352 Mass. 556, 563-564 (1967).

"Whether proffered evidence is relevant and whether its probative value is substantially outweighed by its prejudicial effect are matters entrusted to the trial judge's broad discretion and are not disturbed absent palpable error." Commonwealth v. McGee, 467 Mass. 141, 156 (2014), quoting from Commonwealth v. Spencer, 465 Mass. 32, 48 (2013). S.B. testified to her physical symptoms, as well as to her contemporaneous report of the symptoms to her brother. M.B. testified to his observation of the symptoms, as well as to his sister's report of those symptoms to him. In particular, the testimony that these physical symptoms began after the purported sexual abuse began -- and that it continued while the abuse was ongoing -- was probative of the fact that the abuse actually occurred. Cf. Commonwealth v. Shanley, 455 Mass. 752, 758-759 (2010) (sexual abuse resulting in genital pain). The evidence was particularly probative given the defendant's attacks on the victim's credibility and his allegation that she fabricated the accusation of assault. Even if the evidence increased the jury's sympathy for the victim, that result does not render the evidence inadmissible given its probative value here. See Commonwealth v. Mendes, 441 Mass. 459, 467 (2004) ("Relevant evidence is not rendered inadmissible by its potential to arouse

feelings of sympathy in a jury.  The evidence remains admissible if its probative value outweighs its potential for sympathy").  The judge did not abuse his discretion in admitting this testimony.

ii.  Photographic evidence and appeals to sympathy.  The defendant claims that the admission of photographs of the victim and of her brother showing injuries that resulted from physical abuse by the Dales was unduly prejudicial.  There was no abuse of discretion in the admission of either set of photographs.[15]

"The admissibility of photographic evidence is left to the discretion of the trial judge . . . .  [I]f the photographs possess evidential value on a material matter, they are not rendered inadmissible solely because they are gruesome or may have an inflammatory effect on the jury."  Commonwealth v. Tassinari, 466 Mass. 340, 349 (2013) (citations omitted).  See Commonwealth v. Bradshaw, 385 Mass. 244, 270 (1982) ("It is a rare instance in which the probative value of such evidence is so overwhelmed by its inflammatory potential that a reversal would be warranted").

---

[15] The defendant objected to the introduction of the photographs of M.B. but not to the introduction of the photographs of S.B.  While we review the latter for prejudicial error and the former for a substantial risk of a miscarriage of justice, the difference in these standards is of no moment since we conclude that there was no abuse of discretion.

This is not such a rare instance. The defendant's case at trial was based, in large part, on undermining the victim's credibility, in particular with regard to the question of why she did not report the sexual abuse until several years after the abuse occurred. The photographs of both siblings corroborated the testimony that each gave of physical abuse at the hands of the Dales; this corroboration was particularly important given the defendant's attacks on both siblings' credibility. See Commonwealth v. Qualls, 440 Mass. 576, 586 (2003) (photographs admissible to corroborate testimony). Establishing the extent and brutality of the physical abuse was, in turn, important for the Commonwealth in showing the fear in the household with respect to the Dales that could have led to a delayed report of the sexual abuse.[16]

In addition to explaining the delay in reporting in general, the photographs corroborated the victim's explanation about how the initial incident of sexual abuse unfolded in particular. When the defendant first inappropriately touched S.B., removing her underwear, he said that he was just checking for scars, and she understood him to be checking her for

---

[16] We note also that S.B. knew that Tina was an employee of the Department of Social Services (DSS). S.B. may have feared that any report of the sexual abuse to DSS would be in turn reported to Tina, exacerbating an already difficult living situation.

injuries caused by a beating from Tina earlier that day.[17]  The photographs helped explain both the way the pattern of abuse began and why the victim would have been hesitant to tell the Dales that the incident had unfolded as it did.

With respect to the defendant's argument that the photographs of M.B.'s injuries were not even relevant -- before balancing the probative value against the prejudicial effect -- the photographs helped explain why M.B. might not have told anyone about S.B.'s revelation that Uncle Eddie had touched her inappropriately.  The physical abuse that S.B. and M.B. experienced jointly also reinforced the Commonwealth's narrative that the siblings were close and that they shared private matters with each other -- such as S.B.'s report of sexual abuse -- that they would not share with other family members.  We conclude that it was not an abuse of discretion to admit the photographs showing both S.B.'s and M.B.'s injuries.[18]

---

[17] By stating that he was checking for scars, the defendant contemporaneously linked the physical abuse to the pattern of sexual abuse and attempted to ally himself with the victim in opposition to the Dales.  See note 3, supra.  The fact that this linkage stemmed from the defendant's own words further justifies both the admission of the photographs and the references of them in order to corroborate the history of physical abuse by the Dales.

[18] Even if it were error, there would be no prejudice associated with the admission of the photographs -- let alone a substantial risk of a miscarriage of justice.  The photographs present the Dales in a worse light.  But they cast no darker

We similarly conclude that none of the other elements of the Commonwealth's case at trial, in particular questioning S.B. and M.B. regarding physical abuse at the hands of the Dales and references to the abuse in the Commonwealth's opening statement and closing argument, constituted impermissible appeals to sympathy.[19]  The delay in reporting the abuse and the credibility of S.B. and of M.B. were central issues in the defendant's case at trial.  As with the photographs, the references to the physical abuse helped to explain the victim's delay in reporting the sexual abuse and, to the extent M.B. was aware of the abuse, his failure to report it.

---

shadow on the defendant than that cast by the detailed testimony from S.B. -- corroborated by M.B. -- of the pattern of sexual abuse.  While the photographs would likely have generated sympathy for S.B. in the absence of the other testimony, the victim is a highly sympathetic figure by virtue of the remainder of the evidence -- even without the admission of the photographs.

[19] The prosecutor's statement, in her closing argument, that Tina pleaded guilty to beating the siblings was improper because it was not supported by evidence.  But it did not create a substantial risk of a miscarriage of justice given the strength of the over-all evidence supporting the guilty verdict, and given that the evidence showed that Tina was under investigation for physical abuse and that the siblings ceased to live with the Dales because of the allegations of abuse.  Moreover, the defendant used the testimony with respect to the investigation to his own advantage in arguing that the victim had ample opportunity to report the sexual abuse during the investigation of physical abuse and that her failure to do so casts doubt on her testimony.  We also note that the trial judge instructed the jury that closing arguments were not evidence.  See Commonwealth v. Gonzalez, 465 Mass. 672, 680 (2013).

<u>Judgment affirmed</u>.