NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReportersjc.state.ma.us

17-P-44                                          Appeals Court

COMMONWEALTH  vs.  ADMIRAL SUTHERLAND.

No. 17-P-44.

Hampden.     January 19, 2018. - March 19, 2018.

Present:  Blake, Neyman, & Ditkoff, JJ.


Controlled Substances.  Evidence, Profile, Expert opinion,
     Authentication, Chain of custody.  Witness, Expert.
     Practice, Criminal, Required finding, New trial, Assistance
     of counsel.




     Indictment found and returned in the Superior Court
Department on October 13, 2010.

     The case was tried before John A Agostini, J., a motion for
a new trial was considered by him, and a motion for
reconsideration was considered by him.


     Barbara J. Sweeney for the defendant.
     David L. Sheppard-Brick, Assistant District Attorney, for
the Commonwealth.


     BLAKE, J.  Following a jury trial in the Superior Court,

the defendant, Admiral Sutherland, was convicted of possession

with intent to distribute heroin.  Thereafter, he pleaded guilty to a charge that it was a subsequent offense.  His motions for a new trial and for reconsideration were denied without a hearing.  On appeal, the defendant claims that the admission of improper so-called "negative profiling" evidence amounted to reversible error, that there was insufficient evidence that the substance was heroin, and that it was an abuse of discretion to deny his motion for new trial.  We affirm.

Background.  The jury could have found the following facts.  On September 11, 2010, Massachusetts State police Trooper Luis Rodriguez was conducting a community walk through[1] in Springfield.  Rodriguez noticed a black Nissan being driven by the defendant, who he knew did not have a valid driver's license.  After the defendant parked the Nissan, Rodriguez arrested him for driving with a suspended license.  While searching the defendant, Rodriguez found a package of cigarettes, which contained three bundles.  Each bundle contained ten bags of what Rodriguez believed to be heroin.  Rodriguez also found a small bag of what he believed to be marijuana in the defendant's possession.

---

[1] The community walk through is one of the activities of the community action team, a task force that is focused on high crime areas.  Rodriguez was with members of the Springfield police department and community leaders.

Within earshot of the defendant, Rodriguez discussed with another trooper his intention to apply for a warrant to search the defendant's home. Upon their arrival at the State police barracks, the defendant asked to use the telephone to arrange transportation for his daughter. Rodriguez dialed the telephone number provided by the defendant and handed him the telephone. The defendant said into the receiver, "They're coming. They're coming." Rodriguez immediately ended the telephone call and asked the defendant what he meant. The defendant responded that he wanted them to get rid of the "contraband" in the apartment.

At trial, Rodriguez, a seven-year veteran of the State police, testified that when he arrested the defendant, his appearance was not consistent with symptoms exhibited by drug addicts Rodriguez had encountered in the past. Without objection, Rodriguez testified that people looking for drugs looked like "zombies." He said the defendant was not sweating profusely, did not have bloodshot eyes, did not appear ill or gaunt, and was not skinny or unhealthy looking on the day of his arrest. Rodriguez went on to say that the defendant looked the same at the time of trial as he did when he was arrested. Rodriguez did not find any items on the defendant consistent with personal use of heroin. He testified that, in his experience, ten bags of heroin were the most he had seen someone have on his person for personal use.

Kenneth Gagnon[2] of the Massachusetts State police crime laboratory testified that the bags Rodriguez recovered from the defendant were a mixture of heroin, acetaminophen, caffeine, and quinine or quinidine.

Detective Gregg Bigda of the Springfield police department testified that he had spent eight years in the narcotics bureau and had extensive training and experience in investigating narcotics offenses. He described the manner in which heroin can be used, including the most common way, through injection. He described how heroin is prepared for injection, including the use of a spoon, lighter, and cotton balls. He testified that heavy heroin users consume anywhere from one to more than twenty bags a day, and that they spend most of their day looking for their next bag. Bigda testified that, in his experience, heroin is typically sold in individual bags for personal use at a cost of $10 per bag. He indicated that heroin can sometimes be cheaper if it is purchased in bulk, and that three bundles[3] could cost between $180 and $250.

Bigda also testified that a heroin addict often displays physical symptoms such as weight loss, poor hygiene, and poor

---

[2] Gagnon testified as a substitute chemist, as Dina DeFranco, who tested the substances, no longer worked at the lab. No objection to the substitute chemist was raised at trial, nor was it an issue raised on appeal.

[3] A bundle is ten single-use bags packaged together.

dental health. He indicated these symptoms are not easy to mask, but that some users do not exhibit these symptoms and live relatively productive lives. He also testified that if someone had thirty bags of heroin without any drug paraphernalia, the person was probably selling narcotics, and that people with bundles of heroin are usually selling, although the vast majority of low-level drug dealers are also users. In determining whether someone is selling or using heroin, Bigda testified that quantity is a significant, but not the only factor.[4]

Bigda testified that it is not uncommon to arrest drug dealers without any money on their person, as dealers tend to keep their money and drugs separate to avoid losing both if they are arrested. He also testified that dealers often carry a small amount of drugs on their person and keep the main quantity of drugs at a separate location to avoid losing their investment if arrested. Lastly, he testified that a drug dealer often carries more than one type of narcotic to sell.

At trial, defense counsel conceded that the substance found on the defendant was heroin, but contended that it was for

---

[4] Bigda testified that it would be highly unlikely for a serious addict to buy three bundles at once due to the cost of such a large purchase.

personal use, and not for distribution.[5]  He stressed that Bigda did not find any money, pagers, or cellular telephones in the defendant's possession.

Discussion.  1.  Negative profiling evidence.  The defendant argues that the admission of Bigda and Rodriguez's testimony, which, taken together, indicated that the defendant did not match the physical description of a drug user, i.e, so-called "negative profiling" evidence, was error.  He relies on the holding of Commonwealth v. Horne, 476 Mass. 222 (2017), in support of his claim.  Although Horne was decided after this trial, the Supreme Judicial Court held that the type of evidence deemed inadmissible there has long been prohibited.  As Horne is not a new rule, it is applicable to this appeal.  Compare Commonwealth v. Libran, 405 Mass. 634, 645 (1989) (retroactive application of new rule).  The Commonwealth concedes, as it must, that this evidence was erroneously admitted, but argues that there was no substantial risk of a miscarriage of justice despite the error.[6]

---

[5] The jury were instructed on the lesser included offense of possession.  There was no objection to the instructions.

[6] Although the defendant argues that he should prevail on appeal even under the substantial risk of a miscarriage of justice standard, he also contends that the issue was preserved and that the prejudicial error standard of review applies.  We disagree.  The defendant objected to the first question asked of Trooper Rodriguez involving "negative profiling," but not to the subsequent questions and answers.  Moreover, this objection was

While negative profiling evidence is inadmissible and "inherently prejudicial," it is not the sole factor to be considered in determining whether justice miscarried. Horne, supra at 228. Rather, the error must also "materially influence[] the guilty verdict," Commonwealth v. Alphas, 430 Mass. 8, 13 (1999) (quotation omitted), and our review of the record must leave us with "a serious doubt [as to] whether the result of the trial might have been different had the error not been made," Commonwealth v. Azar, 435 Mass. 675, 687 (2002). In Horne, the expert witness testified that crack cocaine users are generally unkempt, thin, have deteriorating physical appearances, and poor dental hygiene. Horne, 476 Mass. at 225. Here, while Bigda's testimony included this type of evidence, he also provided detailed admissible evidence, which aided the jury on the question of intent to distribute. See Commonwealth v. Little, 453 Mass. 766, 769 (2009) ("[A] [n]arcotics investigator[] may testify as [an] expert[] . . . [and] testify that in his opinion the amount of [drugs] possessed by the defendant was not consistent with personal use but was consistent with an intent to distribute" [quotations omitted]).

---

sustained and the Commonwealth was instructed to rephrase the question. Because the defendant failed to object to the remaining line of questioning (including questions posed to Detective Bigda), we review to determine whether the error created a substantial risk of a miscarriage of justice.

Bigda highlighted the importance of the quantity of drugs recovered, the deliberate separation of a smaller quantity of drugs from both money and a larger quantity of drugs, and the significance of more than one type of drug being carried by a purported dealer. He also addressed the unlikelihood that a user would have three bundles of heroin at one time, simply because of the cost. This evidence was properly admitted as it was outside the common knowledge and experience of lay people and aided the jury in reaching a verdict. See Commonwealth v. Miranda, 441 Mass. 783, 793 (2004).[7]

Unlike Horne, where there was scant evidence of intent to distribute, here there was substantial properly admitted evidence of distribution. Indeed, the defendant's own words and deeds established distribution. After his arrest, he created a ruse about needing to use the telephone to arrange transportation for his daughter. Once the telephone call was placed, the defendant instructed the person on the other end of the telephone to dispose of any additional narcotics and related materials when he said, "They're coming. They're coming." This

---

[7] Rodriguez's testimony about the defendant's appearance, with the exception of the reference to drug users appearing to be "zombie[-like]," was also properly admitted testimony. See Commonwealth v. Johnson, 410 Mass. 199, 202 (1991) (experienced detective qualified as expert). Although the use of the word "zombie[]" gives us pause, we conclude, based on the overwhelming evidence of intent to distribute, that this wording did not create a substantial risk of a miscarriage of justice.

constitutes strong evidence of consciousness of guilt, something that was also not present in Horne. See Commonwealth v. Stuckich, 450 Mass. 449, 453 (2008). Compare Commonwealth v. Montanez, 410 Mass. 290, 306 (1991) (defendant's flight was evidence of consciousness of guilt). The jury could have also considered the ruse and telephone call as evidence of the defendant's intent to distribute. See Commonwealth v. Perez, 76 Mass. App. Ct. 439, 442 (2010) (defendant's attempt to dispose of drugs contributed to evidence of intent to distribute).

And, unlike Horne, the Commonwealth did not emphasize the negative profiling evidence in the closing argument. The focus was on the properly admitted evidence.[8] Contrast Horne, 476 Mass. at 228 (substantial risk of miscarriage of justice where prosecutor's closing argument began by focusing on defendant's appearance, and continued to emphasize profiling evidence, contrasting it with defendant's size, strength, and appearance). Finally, the judge's instructions to the jury, which they are presumed to follow, included factors that they could use in assessing whether the defendant possessed the heroin with the intent to distribute. The judge did not include in the list of factors the appearance of the defendant as compared to that of

---

[8] The prosecutor's closing argument discussing the defendant's appearance comprised one of eleven pages of transcript, and came at the end of the argument.

drug users.  See Commonwealth v. Donahue, 430 Mass. 710, 718 (2000) (jury is presumed to follow judge's instructions).

2.  Sufficiency of the evidence.  The defendant claims the evidence was insufficient to prove the substance he possessed was heroin.  Although this issue was not contested at trial, the Commonwealth was required to prove this element, beyond a reasonable doubt.  We view the evidence in the light most favorable to the Commonwealth.  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

Rodriguez testified that the packets admitted at trial were the ones he confiscated from the defendant.  Gagnon testified that the bags admitted at trial were the bags that were tested, and that they contained heroin.  However, the defendant points to an alleged inconsistency between Rodriguez's testimony and the physical evidence submitted at trial.  Specifically, the defendant asserts that although Rodriguez testified that he took thirty blue packets from the defendant, only twenty-eight pink packets were admitted in evidence at the trial.  This argument fails, as there was no direct testimony that the packets taken from the defendant were blue.  Rather, on cross-examination, Rodriguez acknowledged that in his police report, he stated the packets were blue.  This testimony was not admissible to prove the truth of the matter.  See Commonwealth v. Costello, 411 Mass. 371, 377 (1991).  The jury were entitled to resolve any

inconsistencies in Rodriguez's testimony.  See Commonwealth v. Daughtry, 417 Mass. 136, 140 n.1 (1994).  Furthermore, when resolving issues of sufficiency of the evidence, we resolve all issues of credibility in favor of the Commonwealth.  See Commonwealth v. Walker, 68 Mass. App. Ct. 194, 198-199 (2007).

The defendant's challenge is more properly cast as an attack on the authenticity of the evidence and the related chain of custody.  As there was no objection to the authenticity, we review to determine if there was error, and if so, whether it created a substantial risk of a miscarriage of justice.  See Commonwealth v. McCoy, 456 Mass. 838, 850 (2010).  There was no error.  The Commonwealth must show that the evidence had been in the defendant's possession.  See Commonwealth v. Drayton, 386 Mass. 39, 48 (1982).  Authenticity is determined by a preponderance of the evidence.  Commonwealth v. Siny Van Tran, 460 Mass. 535, 546 (2011).  See Mass. G. Evid. § 901(a) & note (2017).  Authenticity can be established by testimony that the item is what its proponent represents it to be, or where circumstances exist that imply the item is what its proponent represents it to be.  Commonwealth v. Nardi, 452 Mass. 379, 396 (2008).  The Commonwealth established the authenticity of the evidence through both methods -- the direct testimony of Rodriguez and Gagnon's testimony about the bundles' chain of custody.  Any discrepancies in the number of packets and their

color go to the weight of the evidence, not its admissibility. See Commonwealth v. Dale, 86 Mass. App. Ct. 187, 191 (2014). Similarly, any weaknesses in the chain of custody go to the weight of the evidence, not its admissibility. Commonwealth v. Harris, 75 Mass. App. Ct. 696, 706 (2009).

3. Motion for new trial. The defendant contends that trial counsel failed to notice and exploit discrepancies in the drug evidence, and that this failure constituted ineffective assistance, entitling him to a new trial. The motion judge, who was also the trial judge, denied the motion, ruling that the bundles were properly authenticated and admitted at trial; that any flaw or inconsistency in Rodriguez's testimony about the bundles was for the jury to resolve; and that an objection to authenticity would have been futile.

In assessing this claim, we must first determine whether counsel's performance fell below that which might be expected from an ordinary fallible lawyer. If so, we must determine whether better work might have accomplished something material for the defense. Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). We extend special deference to the action of the motion judge who, as here, was also the trial judge. Commonwealth v. Leng, 463 Mass. 779, 787 (2012).

Contrary to the defendant's argument, trial counsel did cross-examine Rodriguez on discrepancies between his report and

the evidence.  Trial counsel ended his recross-examination as follows:

> Q.:  "So when you're looking at the drugs . . . , can you tell the jury what color you described the packets as?"
>
> A.:  "In my report it's blue."
>
> Q.:  "Blue.  Thank you."[9]

Trial counsel's decision not to attack the chain of custody was a reasonable tactical decision, particularly in view of the strength of the Commonwealth's case.  See Commonwealth v. Lally, 473 Mass. 693, 706 (2016) (counsel's strategic decision on focus of cross-examination was not "manifestly unreasonable").  Trial counsel focused on the weakness of the Commonwealth's case -- intent to distribute -- particularly where the evidence of thirty bags of heroin could be for personal use.  Trial counsel was not ineffective for choosing to forgo an argument of insufficient merit.  See Breese v. Commonwealth, 415 Mass. 249, 256 (1993).

> Judgment affirmed.
>
> Orders denying motion for
>     new trial and for
>     reconsideration affirmed.

---

[9] The packets admitted at trial were pink.