COMMONWEALTH vs. SAVANN LENG.

Middlesex. October 5, 2012. - December 3, 2012.

Present: IRELAND, C.J., SPINA, CORDY, DUFFLY, & LENK, JJ.

*Homicide. Practice, Criminal,* Assistance of counsel, Failure to object, Confrontation of witnesses, Waiver, Instructions to jury, Multiple defenses, Capital case. *Evidence,* Motive, Intent, Expert opinion, Intoxication.

At a murder trial, counsel's failure to object to the admission of gang-related evidence did not constitute ineffective assistance, where such evidence was relevant to show motive and intent and to explain witnesses' initial reluctance to cooperate with police; where the judge conducted an individual voir dire of prospective jurors regarding such evidence and instructed the jury on its proper use; and where the prosecutor made only minimal use of such evidence. [781-783]

At a murder trial, counsel's failure to object to testimony by a substitute medical examiner and forgoing of cross-examination of that witness did not constitute ineffective assistance, where the cause of death was not inconsistent with the defense of identity, a strategy that was well-conceived and not manifestly unreasonable [783-785]; further, improper admission through the substitute medical examiner's testimony of facts contained in the autopsy report and autopsy photographs did not create a substantial likelihood of a miscarriage of justice, where such hearsay had minimal impact compared to the substitute medical examiner's properly admitted opinion testimony, which was supported by eyewitness testimony [785-786].

At a murder trial, counsel's failure to present or elicit evidence of the defendant's intoxication did not constitute ineffective assistance, where, although the defendant suggested that he had identified for his counsel witnesses who could testify to his intoxication, he failed to provide their names or affidavits or an affidavit from counsel; where it was reasonable for defense counsel not to cross-examine a witness regarding the defendant's intoxication given the defense's strategy to discredit that witness; and where a voluntary intoxication defense would have been inconsistent with the defense of identity. [786-788]

At a murder trial, counsel was not ineffective in failing to request a jury instruction on voluntary manslaughter based on theories of a sudden transport of passion on reasonable provocation and on sudden combat, where the evidence did not warrant such an instruction. [788-789]

INDICTMENT found and returned in the Superior Court Department on December 28, 2006.

The case was tried before *Frances A. McIntyre*, J., and a motion for a new trial, filed April 28, 2011, was considered by her.

*Willie J. Davis* for the defendant.

*Stephen C. Hoctor*, Assistant District Attorney, for the Commonwealth.

SPINA, J. The defendant was convicted of murder in the first degree based on deliberate premeditation. He filed a motion for a new trial alleging that his trial counsel was ineffective by reason of (1) his failure to object to evidence of gang membership, (2) his failure to object to the testimony of a substitute medical examiner, (3) his failure to present evidence of the defendant's state of intoxication, and (4) his failure to request manslaughter instructions based on a sudden transport of passion on reasonable provocation and sudden combat, and excessive use of force in defense of another. The motion was denied. The defendant's direct appeal and the appeal from the denial of his motion for a new trial have been consolidated in this court. On appeal, the defendant argues error in the denial of his motion for a new trial. We affirm the conviction and the denial of the motion for a new trial, and we decline to grant relief under G. L. c. 278, § 33E.

1. *Background.* The defendant, Corey Kneeland, and Bunrath La, members of a gang known as the Dangerous Lowell Bloods (DLB), attended a party at an apartment in Lowell on October 31, 2006. Kneeland and Joshua Gens, the victim, became embroiled in an argument over a bottle of beer. Kneeland raised his hand to strike the victim, but before he could land a blow, the victim struck Kneeland in the head twice with a beer bottle, drawing blood. They fought. Kneeland grabbed a wrench and struck the victim with it. La then hit the victim over the head with a chair. The victim fell to the floor. The defendant entered the room waving a gun, and announced, "Who wanna die?" The fighting stopped. He asked Kneeland who hit him in the head. Kneeland pointed to the victim. The defendant asked the victim if he wanted to die. He aimed the gun at the victim, and then shot him. Kneeland, La, and the defendant fled. The victim died about two hours later from a gunshot wound to the chest that perforated his right lung and caused massive bleeding.

2. *Standard of review.* Where the denial of the defendant's motion for a new trial is considered in conjunction with his direct appeal from a conviction of murder in the first degree, our review proceeds under the more exacting standard required by G. L. c. 278, § 33E. We first inquire if the denial of the motion was based on an error of law or an abuse of discretion. See *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986), and cases cited. If so, we then must determine whether such error creates a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Nieves*, 429 Mass. 763, 770 (1999). We extend special deference to factual determinations made by a motion judge who also was the trial judge, as here. *Commonwealth* v. *Grace, supra.*

3. *Gang membership.* The defendant argues that trial counsel was ineffective for failing to object to the admission of gang-related evidence. Trial counsel filed a motion in limine to exclude this evidence, but it was denied. Counsel did not preserve the issue for appellate review by objecting at the time the evidence was admitted. See *Commonwealth* v. *Whelton*, 428 Mass. 24, 25 (1998). The judge ruled that counsel was not ineffective because the gang-related evidence was properly admitted as evidence of motive, and requisite measures were taken to minimize its potentially prejudicial effect.

The defendant bears the burden on a claim of ineffective assistance of counsel to show "behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). As to the latter point, this court has said that "there ought to be some showing that better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). Where the focus on counsel's performance is not a lack of preparation but pursuit of a particular strategy, we do not assess counsel's performance "with the advantage of hindsight." *Commonwealth* v. *Adams*, 374 Mass. 722, 728-729 (1978). Rather, we inquire whether counsel's strategy was "manifestly unreasonable when made." *Commonwealth* v. *Martin*, 427 Mass. 816, 822 (1998), and cases cited.

The defendant asks us to focus on not only evidence that he was a member of the DLB, but also the testimony of Kneeland to the effect that gang members have an obligation "[t]o fellow members in fights . . . to [] have each others' backs [and] [t]o not snitch[, i.e.,] not cooperate with the police." He contends that the evidence relating to gangs was "not necessary" for two reasons, and that counsel should have objected. First, he asserts that the shooting death of Gens did not occur as a result of gang activity. Second, the defendant argues he had the right to come to Kneeland's defense, see *Commonwealth* v. *Martin*, 369 Mass. 640, 647-649 (1976), independent of their affiliation in the same gang. Thus, he reasons, the probative effect of the gang membership evidence, if any, was far outweighed by its prejudicial effect and it should not have been admitted had counsel objected.

The defense in this case was the Commonwealth's failure to prove beyond a reasonable doubt that the defendant was the shooter. The three witnesses who identified him as the shooter previously had lied to police about the identity of the shooter. Two, Kneeland and La, were DLB members; the third was a member of the Bloods gang from Lynn. None of the nongang witnesses at the party could identify the defendant as the shooter. The member of the Bloods gang from Lynn first told police he did not see the shooting because he was in a different room. He later identified the defendant as the shooter. He testified that at the time he gave each statement it was in his best interest to say what he said. He did not elaborate. Kneeland and La previously had told police they did not know who shot the victim. Both received specific consideration from the Commonwealth for their testimony. There was no suggestion at trial that defense of another (Kneeland) would be a matter for the jury to consider.

The defendant is incorrect in his assertion that the victim was not killed as a result of gang activity. Although it is true that there was no evidence that the victim was a member of a rival gang, that is not the only basis for the relevance of gang-related evidence. The relevance of Kneeland's, La's, and the defendant's membership in the DLB gang is that the gang's code of having "each others' backs" explains the defendant's motive to retaliate against the victim for striking Kneeland with a beer

bottle. See *Commonwealth* v. *Maldonado*, 429 Mass. 502, 504-505 (1999). The judge stated in her memorandum of decision that "[w]ithout this evidence, the homicide would have made no sense to the jury." We agree. See *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 269 (1982). The gang's code against cooperating with police also explains Kneeland's and La's initial reluctance to tell police that they saw the defendant shoot the victim, a point Kneeland acknowledged. The gang-related evidence was highly relevant.

Even if the evidence supported the defendant's claim of defense of Kneeland and even if he raised that issue at trial, the relevance and admissibility of the gang-related evidence on the question of motive would not be negated, as the defendant argues. They are matters for the jury to weigh and resolve.

When evidence of gang membership is admitted to show motive, the judge has a responsibility to minimize the potential prejudicial nature of the evidence through devices such as voir dire of prospective jurors and limiting instructions. See *Commonwealth* v. *Rosario*, 460 Mass. 181, 192-193 (2011); *Commonwealth* v. *Swafford*, 441 Mass. 329, 332 (2004). The judge conducted an individual voir dire of prospective jurors regarding gang-related evidence, she gave a forceful limiting instruction immediately after the evidence was admitted, and she charged the jury in her final instructions on the proper use of the gang membership evidence. We add that the prosecutor made only minimal use of the gang-related evidence.

The judge did not abuse her discretion or otherwise err at trial in admitting gang-related evidence for the limited purpose of showing the defendant's motive and intent. An objection to such properly admitted evidence would not likely have been successful. Counsel's omission, therefore, does not constitute ineffective assistance of counsel. See *Commonwealth* v. *Bart B.*, 424 Mass. 911, 915 (1997). Denial of this aspect of the defendant's motion for a new trial was not error.

4. *Substitute medical examiner.* The defendant next maintains that counsel was ineffective for failing to demand explanations for the nonappearance of the medical examiner who performed the autopsy in this case and for the appearance of a substitute medical examiner who gave opinion testimony as to the cause

of death. He also faults counsel for forgoing all cross-examination of the substitute medical examiner.

In this case, trial counsel and the prosecutor entered into a multifaceted agreement concerning photographic evidence that implicated the testimony of the substitute medical examiner. Under the terms of the agreement, no autopsy photographs would be offered in evidence and trial counsel would not contest the cause of death. In addition, only three photographs of the victim would be offered in evidence. They also agreed to exclude from evidence a photograph of the defendant with a DLB gang tattoo, and to crop a "Thug Life" tattoo from a photograph of the defendant. At the conclusion of the direct examination of the substitute medical examiner, trial counsel reaffirmed his part of the agreement, stating he "intentionally" had not objected to the witness's testimony. This type of agreement, which includes a waiver of confrontation rights as to cause of death, is permissible. See *Commonwealth* v. *DiPadova*, 460 Mass. 424, 438 & nn.16, 17 (2011).

Where the defendant faults counsel for failing to demand an explanation for the nonappearance of the medical examiner who performed the autopsy, it is his burden to show why the medical examiner was not called to testify. He has not met his burden. Nor has he shown that, whatever the reason, it would have helped his defense. He also has not shown how cross-examination "might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). See *Commonwealth* v. *Phillips*, 452 Mass. 617, 637 (2008). We have never said that failure to cross-examine a witness is per se ineffective assistance of counsel. There may be any number of reasons why the decision to forgo cross-examination of a witness is a reasonable trial tactic. See, e.g., *Commonwealth* v. *Cintron*, 438 Mass. 779, 787 (2003) (no need to challenge Commonwealth's forensic evidence because it was not inconsistent with theory of defense). Here, there was no reason to challenge the cause of death because it was not inconsistent with the defense of identity.

In addition, the judge indicated that it was manifestly obvious that the cause of the victim's death was a single gunshot wound to the chest, fired during a brief event that unfolded before

numerous witnesses less than two hours earlier. If trial counsel had contested the cause of death, the record indicates specifically that he would have risked admission of the autopsy photographs. Trial counsel also would have risked distracting the jury from the real issue in the case, namely, the credibility of the identifying witnesses. The defendant acknowledges that trial counsel did an "excellent job" discrediting Kneeland. To the extent that the length of jury deliberations can ever be an indication of their thought processes, the jury deliberated one full day and part of a second day in a case where the testimony consumed less than four days. The identification defense was focused, straightforward, and very well executed. By all indications the defense strategy was extremely well conceived, and not manifestly unreasonable. There has been no showing of error in the denial of the defendant's motion for a new trial as to the failure to demand an explanation for the need to call a substitute medical examiner or the failure to cross-examine him.

Although the defendant expressly does not challenge our jurisprudence that allows a substitute medical examiner to express his own independent opinion as to cause of death based on facts not in evidence but that could have been admitted in evidence, see *Commonwealth* v. *Nardi*, 452 Mass. 379, 388 (2008), quoting *Commonwealth* v. *Markvart*, 437 Mass. 331, 337 (2002), we review the question for a substantial likelihood of a miscarriage of justice, pursuant to our duties under G. L. c. 278, § 33E. Here, the substitute medical examiner's testimony was based on his review of the records of the ambulance company that transported the victim from the crime scene to a local hospital where he was pronounced dead, the records of that hospital, the records of the medical examiner who performed the autopsy, and the autopsy photographs. He properly could express his own opinion based on those materials, because, although the facts and data contained in those materials had not been admitted in evidence, they were "independently admissible and are a permissible basis for an expert to consider in formulating an opinion." *Commonwealth* v. *Nardi, supra,* quoting *Commonwealth* v. *Markvart, supra.* He could not, on direct examination, testify to any details or opinions in those materials. See *Commonwealth* v. *Avila,* 454 Mass. 744, 761-762 (2009); *Commonwealth* v. *Nardi, supra* at 391-393.

The prosecutor diligently strove to keep the substitute medical examiner focused on giving his own opinion as to the cause of death without reciting details from the hearsay materials. He was not always successful, and some hearsay slipped in, such as the location and identification of the entrance and exit wounds, the path of the bullet through the body, and the specific internal damage caused by the bullet. These underlying details should not have been admitted. There was no objection or motion to strike. However, these improperly admitted details had minimal impact compared to the properly admitted opinion testimony of the substitute medical examiner as to the cause of death. See *Commonwealth* v. *Emeny, ante* 138, 146 (2012); *Commonwealth* v. *Avila, supra* at 763.

In addition, properly admitted eyewitness testimony provided a sufficient factual basis for the opinion of the substitute medical examiner's opinion as to cause of death. See *Commonwealth* v. *Tu Trinh*, 458 Mass. 776, 789-790 (2011). Eyewitnesses testified to the shooting itself, and a paramedic who attended to the victim at the scene described the entrance and exit wounds and testified that the victim "was losing a lot of blood." Any error in the admission of a few details from the autopsy report and autopsy photographs did not create a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). See also *Commonwealth* v. *Rogers*, 459 Mass. 249, 265-266, cert. denied, 132 S. Ct. 813 (2011); *Commonwealth* v. *Tu Trinh, supra.*

5. *Voluntary intoxication.* In support of his motion for a new trial, the defendant presented his own affidavit in which he stated that trial counsel was aware that, at the time of the shooting, the defendant had consumed a great deal of alcohol and was intoxicated. Trial counsel called no witnesses to testify to this fact. Nor did he elicit testimony from Kneeland, who allegedly knew the defendant was intoxicated, to put the issue of voluntary intoxication before the jury. The defendant contends that trial counsel was ineffective for failing to present or elicit evidence of his intoxication, which would have been relevant to whether he was capable of deliberate premeditation and whether he was capable of forming the specific intent to kill. See *Commonwealth* v. *Henson*, 394 Mass. 584, 592-593 (1985).

The judge was not required to accept as true the assertions in the defendant's affidavit. She could evaluate it in light of such factors as bias and self-interest and reject the affidavit as not credible, which she did. See *Commonwealth* v. *Grant*, 426 Mass. 667, 673 (1998). The judge noted that although the defendant suggested he had identified for trial counsel witnesses who could have testified to his intoxication, he had offered neither the names nor affidavits of any such witnesses. Nor had he offered the affidavit of Kneeland, who he said could have testified on cross-examination as to the defendant's state of intoxication. Finally, there is no affidavit from trial counsel verifying what the defendant allegedly told him, together with some explanation for not pursuing such witnesses or eliciting such information from Kneeland during cross-examination.

We look askance on attempts to obtain appellate review on an entirely different theory from that which was presented, without success, at trial. See *Commonwealth* v. *Peloquin*, 437 Mass. 204, 210 (2002), citing *Commonwealth* v. *Johnson*, 374 Mass. 453, 465 (1978). The judge did as well. The defendant does not disavow trial counsel's strategy of discrediting Kneeland and the other two witnesses who identified him as the shooter. He has praised trial counsel's performance in that respect. His complaint is that counsel abandoned a second strategy. In that regard the judge noted that where attacking Kneeland's credibility was the main prong of the defense, it would have been reasonable not to cross-examine Kneeland about the defendant's alleged intoxication on the night of the shooting because "[c]ounsel would be left in the untenable position of arguing that Kneeland was credible on intoxication but not credible on identification." We extend special deference to the action of a motion judge who also was the trial judge, as here. *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986). We agree with her assessment of counsel's performance.

In addition, although it may indeed be advantageous to ride two horses into battle, they should be harnessed to run in the same direction. A voluntary intoxication defense would have been inconsistent with the defense of identification because it implicitly would have conceded the defendant's role as the shooter. It would not have been unreasonable for trial counsel

to forgo that strategy for this reason as well. See *Commonwealth* v. *Morales*, 453 Mass. 40, 48 (2009). The judge neither erred nor abused her discretion in concluding that trial counsel was not ineffective for not pursuing a voluntary intoxication defense.

6. *Voluntary manslaughter*. The defendant faults trial counsel for failing to request a voluntary manslaughter instruction based on theories of a sudden transport of passion on reasonable provocation and sudden combat. See *Commonwealth* v. *Walden*, 380 Mass. 724, 727 (1980). He also contends that the evidence supported a theory of defense of another, Kneeland, albeit with excessive force.

The judge correctly concluded that, viewing the evidence in the light most favorable to the defendant, there was no evidence that the victim had provoked the defendant at the time of the shooting, or had engaged him in combat. "[P]rovocation must come from the victim." *Commonwealth* v. *Ruiz*, 442 Mass. 826, 838-839 (2004). The victim's conduct could not be considered reasonable provocation because there was no evidence that he posed a threat of serious harm to the defendant. There was no evidence the victim was armed, or threatened to harm the defendant, or made any move toward the defendant. See *Commonwealth* v. *Rembiszewski*, 363 Mass. 311, 321 (1973). In addition, there was nothing to prevent the defendant from retreating, which he was obliged to do. See *Commonwealth* v. *Espada*, 450 Mass. 687, 692 (2008), and cases cited.

With respect to defense of another, there was no evidence that the victim posed any ongoing threat to Kneeland at the time of the shooting. See *Commonwealth* v. *Young*, 461 Mass. 198, 211 (2012). The defendant did not even see who had struck Kneeland. When he entered the room where people were fighting, he made his presence known and displayed a gun. The fighting stopped and people stepped back. The defendant conducted his own inquiry about the fight. When he learned what he wanted to know, he aimed his gun at the victim and fatally shot him. In these circumstances no instruction on defense of another was warranted. *Id.* at 208-209, 211. The judge correctly concluded that counsel was not ineffective for failing to request an instruction that was not warranted by the evidence. See *Commonwealth* v. *Donlan*, 436 Mass. 329, 335 (2002).

There was no error or abuse of discretion in the denial of the defendant's motion for a new trial.

7. *G. L. c. 278, § 33E.* We have reviewed the briefs and the entire record on appeal, and see no reason to reduce the degree of guilt or order a new trial.

*Judgment affirmed.*

*Order denying motion for
a new trial affirmed.*