NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

21-P-1007                                         Appeals Court

COMMONWEALTH  vs.  ROBERT GARDNER.

No. 21-P-1007.

Middlesex.     September 9, 2022. – February 15, 2023.

Present:  Shin, Hand, & Brennan, JJ.


Rape.  Assault and Battery.  Assault and Battery by Means of a
    Dangerous Weapon.  Stalking.  Protective Order.
    Intimidation of Witness.  Husband and Wife, Rape.
    Practice, Criminal, Required finding, Discovery, New trial,
    Assistance of counsel, Hearsay, Argument by prosecutor.
    Evidence, Medical record, Telephone conversation, Verbal
    completeness.


    Indictments found and returned in the Superior Court
Department on September 11, 2015, and August 17, 2017.

    The cases were tried before Robert L. Ullmann, J., a
postconviction motion for discovery and funds was heard by him,
and a motion for a new trial was heard by him.


    Dennis Shedd for the defendant.
    Ryan J. Rall, Assistant District Attorney, for the
Commonwealth.


    BRENNAN, J.  A Superior Court jury convicted the defendant,

Robert Gardner, of aggravated rape, assault and battery causing

serious bodily injury, assault and battery by means of a dangerous weapon causing serious bodily injury (two counts), assault and battery on a family or household member (two counts), stalking, violation of a restraining order, and intimidation of a witness.[1]  The offenses were committed against his former wife, spanned over half a decade, and resulted in significant physical injuries to the victim at various times, including a fractured back, a broken nose, and a fractured skull.  This physical violence was underpinned by emotional manipulation of the victim, and frequently manifested in the defendant's pressure on her to recant her allegations and assert her marital privilege not to testify against him.

We consider the defendant's appeals from his convictions, the order denying his postconviction motion for discovery and funds, and the order denying in part his motion for a new trial based on his claims of ineffective assistance of trial counsel.[2]

---

[1] The jury acquitted the defendant of a second count of aggravated rape, rape, assault with intent to rape (two counts), and a second count of intimidation of a witness.  A related charge of cruelty to animals was dismissed prior to trial.

[2] The defendant contended that his trial counsel was ineffective for a variety of reasons.  After a nonevidentiary hearing, the judge agreed with the defendant on one of these arguments -- that counsel was ineffective in failing to request an instruction defining "substantial emotional distress" -- and thus granted a new trial on the intimidation of a witness conviction.  The judge otherwise denied the defendant's motion. The Commonwealth did not appeal from the partial allowance of the motion for a new trial.

Concluding that (1) there was sufficient evidence of witness intimidation to support the defendant's conviction, (2) there was no error in the admission at trial of a recorded telephone conversation between the defendant and his father, (3) the denial of the defendant's postconviction request for discovery and funds was not an abuse of the judge's discretion, and (4) trial counsel was not ineffective, we affirm.

1. Background. The defendant and the victim began dating in 2004, married in 2009, and ultimately divorced in 2017. Less than one year into their relationship the defendant became physically and sexually abusive toward the victim. Thereafter, the defendant frequently was violent toward her, although the victim rarely reported his abuse.

The first reported incident of abuse occurred on August 7, 2008. According to the victim, after she refused the defendant's demand for sex, he held her cat against the wall by its throat, hit the victim, and raped her.[3] The victim reported to police what the defendant had done to her cat but was "too scared" to disclose the sexual assault. The defendant soon convinced the victim that the incident was her fault, and she wrote a letter to him apologizing "for the court case[] that I

---

[3] The defendant was acquitted of the rape charge relating to this incident.

have you involved in." The victim later provided an affidavit to the prosecutor, written by the defendant, then copied and signed by the victim, requesting that the charges be dismissed.

The next reported assault took place on February 20, 2011. After a night of arguing, the defendant and the victim began to have consensual sex. When the victim tried to stop the sexual interaction, the defendant pushed her down and hit her repeatedly. Although she called the police, the victim initially reported only the physical abuse, because she was "[still] too scared" to report the sexual assault. As a result of this attack, she suffered swelling and bruising on her head, pain in her ribs, vaginal bleeding, and a broken vertebra.

The victim obtained a restraining order against the defendant in conjunction with this assault. Shortly after the order issued, the defendant violated it. The victim reported the restraining order violation to police and the defendant was charged in the District Court. Subsequently, the victim submitted an affidavit to the District Court, drafted by the defendant's attorney, asking that the criminal cases against the defendant be dismissed.

On October 2, 2014, an argument between the victim and defendant escalated into a physical assault in which the defendant broke the victim's nose. The victim called police and the defendant was arrested. Over the next several months, the

defendant repeatedly tried to convince the victim to retract those allegations of domestic violence.  He was angry with the victim and told her the incident was not his fault, but instead was a result of her mental illness.  One such conversation in March 2015 erupted into another violent incident that resulted in the defendant's arrest.[4]  While held in custody on that matter, the defendant told the victim to get him out of jail, directed her to call his attorney, and instructed her to obtain letters from her psychiatrist to support her recantation of the allegations against him.  Ultimately, the victim provided the District Court with a letter from her psychiatrist and indicated that she did not want to cooperate with prosecution.  The charges in the District Court were dismissed at the victim's request.

On June 3, 2015, after the victim refused the defendant's demand for sex, the defendant threw an object at the victim, striking her in the head and fracturing her skull.  After calling 911, the victim passed out in the street.  The victim went by ambulance to the hospital, where she underwent a craniotomy to remove a blood clot and relieve pressure on her brain.

---

[4] The March 2015 incident was not the subject of an indictment in this case.

After her release from the hospital, the victim lived in New Hampshire. On July 24, 2015, she rented a motel room in Tewksbury and agreed to see the defendant. The victim initially consented to have sex with the defendant, but when she told him to stop, they argued. The defendant disabled the telephone in the motel room (motel phone) so that the victim could not call for help. Over the next few hours, the defendant repeatedly raped the victim vaginally and forced his penis into her mouth. When the victim yelled at him to stop, the defendant put his hand over her mouth to keep her quiet, which caused the victim to struggle to breathe. When the victim tried to leave, the defendant stood in front of the door and locked it. At some point, the victim got her cell phone and dialed 911. She turned on the cell phone speaker and the defendant made several whispered threats, including that he was going to kill her and her daughter. The defendant fled before police arrived.

When police arrived, the victim was crying and shaking. She had bruising and swelling on her face, her mouth was bleeding, and the room was in disarray with the motel phone ripped off the wall. Although initially reluctant to seek treatment, the victim went to the hospital later that day. A sexual assault nurse examiner (SANE) documented numerous injuries and bruising all over the victim's body.

Shortly after her release from the hospital, the victim spoke to the defendant. The police had not yet arrested the defendant and, despite the most recent attack, the victim did not want them to do so because she still loved him. The defendant told the victim that to avoid his prosecution they should run away and stay elsewhere for several years. The defendant and victim left Massachusetts together the following day, but a police task force eventually located them in New Jersey. Immediately after his arrest, the defendant began to exhort the victim from the holding cell to support him: "We're strong, we know how to do this . . . we just got to do what we have to do to be strong."

The defendant was returned to Massachusetts and subsequently charged in Superior Court in indictments that encompassed the victim's allegations of abuse from 2011 through 2015. While in custody awaiting trial, he sent letters to the victim. As a result of his sending those letters, the defendant was charged in a separate indictment with intimidation of a witness. All the indictments were joined for trial.

2. <u>Discussion</u>. a. <u>Direct appeal</u>. i. <u>Sufficiency of evidence of intimidation of a witness</u>. The defendant was convicted of one count of intimidation of a witness. His first challenge on appeal is to the judge's denial of his motion for a required finding of not guilty as to that indictment. When

reviewing the denial of a motion for a required finding of not guilty, "we consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Oberle, 476 Mass. 539, 547 (2017). "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'" Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303 (2016), quoting Commonwealth v. Woods, 466 Mass. 707, 713, cert. denied, 573 U.S. 937 (2014).

The elements required to prove intimidation of a witness are that the defendant (1) willfully; (2) threatened, intimidated, or harassed; (3) a witness "in a criminal proceeding of any type; (4) with the intent to impede or interfere with a criminal investigation or proceeding." Commonwealth v. Nordstrom, 100 Mass. App. Ct. 493, 499-500 (2021). See G. L. c. 268, § 13B. The defendant argues that there was insufficient evidence that the defendant threatened, intimidated, or harassed the victim. Although we agree that the defendant did not explicitly threaten the victim, we conclude that there was sufficient evidence to support a conviction of witness intimidation either by intimidation or by harassment.

As relevant here, "intimidation" means "acts or words that would instill fear in a reasonable person." Commonwealth v.

Rivera, 76 Mass. App. Ct. 530, 535 (2010). See Commonwealth v. Perez, 460 Mass. 683, 703 (2011). The Commonwealth's evidence demonstrated that the parties' lengthy relationship was punctuated by cycles of the defendant abusing, supporting, blaming, "gaslighting,"[5] and pressuring the victim to recant her allegations against him. See Commonwealth v. Pagels, 69 Mass. App. Ct. 607, 613 (2007) ("the jury may consider the context in which the allegedly threatening[, intimidating, or harassing] statement was made and all of the surrounding circumstances"). In the trove of letters sent by the defendant to the victim from jail while he awaited trial on the various charges stemming from his abuse of her between 2011 and 2015, the defendant consistently urged the victim not to testify against him,[6]

---

[5] Gaslighting is defined as "psychological manipulation of a person usually over an extended period of time that causes the victim to question the validity of their own thoughts, perceptions of reality, or memories and typically leads to confusion, loss of confidence and self-esteem, uncertainty of one's emotional or mental stability, and a dependency on the perpetrator." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/gaslighting [https://perma.cc/Q6XW-SGTU].

[6] For example, he wrote to her that "even in the Bible it talks about solving your legal battles before you go before a judge." After the victim filed for divorce, the defendant provided her with a written "motion to stay judgement [sic] for divorce" and asked her to file it in court. He explained that reconsidering divorce was her "best opportunity to not have to testify."

admonished her for meeting with prosecutors,[7] and coached her on what to say in court.[8] Although not explicitly threatening, the letters included repeated references to the victim as both the reason for his incarceration and prosecution and the only potential key to his freedom. We are satisfied that in the context of the defendant's longstanding pattern of controlling and abusive conduct toward the victim, the defendant's words would have made a reasonable person fearful of the consequences of refusing to do as the defendant directed. See Commonwealth v. Carvalho, 88 Mass. App. Ct. 840, 845-846 (2016) (even where defendant's words are not expressly threatening, intimidating, or harassing, his behavior may fall within meaning of intimidation).

Alternatively, "harassment" under the witness intimidation rubric requires proof of an act that "seriously alarms or annoys" a person "and would cause a reasonable person . . . to suffer substantial emotional distress." G. L. c. 268,

---

[7] When he learned that the victim provided his letters to the prosecutor, the defendant sent a letter criticizing her for "run[ning] straight to the [assistant district attorney] with [them]," and told her, "that's the problem with your actions, you don't think about the long term consequence."

[8] In one letter discussing "this intimidation charge," the defendant writes, "It might help if you let people know you don't feel afraid or intimidated." In another, he tells the victim not to object to his request to obtain her medical records.

§ 13B (a).  See Commonwealth v. Middleton, 100 Mass. App. Ct. 756, 763-764 (2022).  "[E]motional distress that is merely trifling or passing is not enough to satisfy this element, but must be markedly greater than that commonly experienced as part of ordinary living."  Commonwealth v. Robinson, 444 Mass. 102, 108 (2005).  There was ample evidence in this case that the victim suffered years of sexual, physical, and emotional abuse by the defendant in a controlling domestic relationship from which she was struggling to extricate herself.[9]  The defendant's letters to the victim from jail plucked the same emotional strings that led her to recant in prior cases, and he played on the victim's embedded insecurities in his repeated attempts to convince her to abandon this prosecution.[10]  The victim testified that the defendant's barrage of letters and telephone calls "was driving my head crazy . . . repeating the same thing when

---

[9] As we have acknowledged previously, "[d]omestic violence is a complex phenomenon that results in psychological and physical injuries to a significant number of persons each year . . . .  The pattern typically exhibited by battered women . . . includ[es] their tendency to leave and then return to the batterer many times before finally ending the relationship" (quotation and citation omitted).  Commonwealth v. Gordon, 87 Mass. App. Ct. 322, 333 n.13 (2015).

[10] Sounding a theme woven into virtually every communication, in one such letter the defendant wrote, "your life's a mess and you need to get it back in order," and advised the victim to "go back to church" to "make amends," while simultaneously professing his love for her and insisting, "this is my last chance, our last chance, to stop this [prosecution]."

expecting a different result and a different result wasn't going to come."  She also testified that the communications were so upsetting that she refused to accept them for a time, and that she ultimately came to understand why her family and friends were fearful for her.  Considering the victim's testimony in context, we are satisfied that the defendant's efforts to convince her to foil the prosecution against him for abusing her caused the victim "serious alarm or annoyance" and would have engendered "substantial emotional distress" in a reasonable person.  See Robinson, supra.

In sum, we are satisfied that the evidence was sufficient under both the "intimidation" and "harassment" theories of witness intimidation, either one of which would have supported the defendant's conviction.

ii.  Telephone call between the defendant and his father. The Commonwealth introduced in evidence, over the defendant's objection, a portion of a recorded telephone call the defendant made to his father from jail on September 5, 2015, while awaiting trial (September 5 call).[11]  The defendant argues that his father's statements were inadmissible because they included

---

[11] The judge instructed the jury not to "take anything that [the father] said for the truth of the matter."

an opinion that the victim was being truthful.[12]  We disagree.
Contrast Commonwealth v. Spencer, 465 Mass. 32, 48 (2013)
(detectives' opinion that defendant is guilty and lying and
"police reiteration of accusations by third parties that the
defendant has denied" are inadmissible).  The father's
statements provided context for the defendant's admissions that
"I have no defense against this" and "I haven't been able to own
up to it yet because of this phone thing."  See Mass. G. Evid.
§ 801(d)(2)(A) (2022); Commonwealth v. Mejia, 88 Mass. App. Ct.
227, 238 (2015) (statement of second speaker on telephone call
properly admitted to provide context to conversation).
Particularly where the jury were instructed that they could not
consider the father's statements for their truth, we discern no
error in the judge's implicit determination that the probative
value of the father's statements outweighed any prejudice to the
defendant, and no abuse of discretion in the admission of those
statements.  See Commonwealth v. Robertson, 489 Mass. 226, 237-
238, cert. denied, 143 S. Ct. 498 (2022) (witness's opinion

---

[12] Although the defendant does not identify with specificity
which of the statements were inadmissible, it appears that he is
challenging the following statements made by the father at
various points during the call:  "[Y]ou need to face up to what
you've done"; "[Y]ou use this marital privilege as a shield and
I disagree"; "In talking to [the victim], I don't believe that
[she was pressured]. . . .  That's not where I feel things are
at"; and "I'm sure there's more than one side.  But I don't
think you own up to your side either."

testimony did not require reversal where judge gave appropriate curative instruction); Spencer, supra (weighing probative value versus prejudice of proffered evidence entrusted to trial judge's broad discretion).

b. Postconviction discovery. Prior to filing his motion for a new trial, the defendant requested discovery of the victim's medical records and funds for experts to review them. "Discovery in the context of a new trial motion under Mass. R. Crim. P. 30 (c) (4), 378 Mass. 900 (1979), is not a matter of right. The motion and affidavits must first establish a prima facie case before discovery is available." Commonwealth v. Arriaga, 438 Mass. 556, 569 (2003). Here, counsel's affidavit averred only that the discovery was necessary to explore the effects that medication and mental illness "may have had" on the victim's behavior and memory and the reasons she required nasal surgery in April 2015. Where the defendant advanced no more than a hypothetical and speculative basis for his request, we discern no abuse of discretion in the judge's denial of the motion. See Commonwealth v. Camacho, 472 Mass. 587, 598 (2015) ("In order to prevail on a posttrial discovery motion, a defendant must demonstrate that it is reasonably likely that such discovery will lead to evidence possibly warranting a new trial").

c.  Motion for a new trial.[13]  The defendant raised numerous claims of ineffective assistance of counsel in his motion for a new trial.  Where, as here, the motion judge was the trial judge, "[r]eversal for abuse of discretion is particularly rare."  Commonwealth v. Rice, 441 Mass. 291, 302-303 (2004), quoting Commonwealth v. Schand, 420 Mass. 783, 787 (1995).  To prevail on a claim of ineffective assistance of counsel, "the defendant must show that the behavior of counsel fell measurably below that of an ordinary fallible lawyer and that such failing 'likely deprived the defendant of an otherwise available, substantial ground of defence.'"  Commonwealth v. Prado, 94 Mass. App. Ct. 253, 255 (2018), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  Reviewing the denial of the defendant's motion for a new trial for a significant error of law or abuse of discretion, see Commonwealth v. Wright, 411 Mass. 678, 682 (1992), S.C., 469 Mass. 447 (2014); Commonwealth v. Sorenson, 98 Mass. App. Ct. 789, 791 (2020), cert. denied, 142 S. Ct. 107 (2021), we discern no reason to disturb the judge's ruling.

---

[13] As we have noted, the judge decided the defendant's motion after a nonevidentiary hearing; he outlined his reasoning in a thoughtful and detailed written memorandum.  On appeal, the defendant does not contend that the judge, who also presided over the trial, erred in failing to take additional evidence on the motion.

i.  Telephone calls.  As we have discussed, defense counsel objected to the introduction of the September 5 call between the defendant and his father on the ground that it included improper opinion evidence.  In his motion for a new trial, the defendant argued that counsel should have raised additional objections to that call, and also should have objected to the scope of the redactions made to the recordings of other telephone calls played for the jury.  We disagree.

A.  Verbal completeness.  "When a party introduces a portion of a statement or writing in evidence the doctrine of verbal completeness allows admission of other relevant portions of the same statement or writing which serve to 'clarify the context' of the admitted portion" (citation omitted).  Commonwealth v. Carmona, 428 Mass. 268, 272 (1998).  See Mass. G. Evid. § 106(a) (2022).  The defendant contends that the September 5 call was redacted improperly to omit his statement, "I have not instigated any of this," and as a result the conversation failed to establish that he disputed the victim's allegations.[14]  Even assuming that the redacted portion of the

---

[14] The following exchange from that call was not part of the evidence presented to the jury:

Defendant:  "Yeah.  Everything we say from now until the end of my trial is going to be recorded."

Father:  "I believe that."

conversation was admissible under the doctrine of verbal completeness, the defendant's statement that he had not "instigated any of this" was not a denial of guilt of the crimes charged against him. Nor was it inconsistent with the victim's version of several of the incidents, in which she described starting arguments that the defendant then escalated. Thus, we fail to discern in this instance how "better work might have accomplished something material for the defense." Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977).

The defendant also argues that two recorded telephone conversations with the victim were redacted in a manner that allowed the prosecutor to argue that he was trying to convince the victim to provide false information to the court by way of a letter from her therapist in order to "get the [2015] charges dropped," or allowed the jury to infer that he was urging the victim to give false testimony. We need not linger on this argument. Even assuming, without deciding, that trial counsel fell below acceptable standards in failing to object to the redactions at issue, see Saferian, 366 Mass. at 96, because these calls pertained only to the witness intimidation charge on which the defendant was acquitted, there was no resulting

---

Defendant: "So how it [sic] that we're going to talk and talk about this situation? I told you that, you know, I have not instigated any of this."

prejudice to the defendant. See <u>Commonwealth</u> v. <u>Duffy</u>, 62 Mass. App. Ct. 921, 923 (2004) ("difficult to find that the admission of the evidence caused prejudice where defendant was acquitted on two of three indictments" [quotation and citation omitted]).

B. <u>Adoptive admissions</u>. "The theory of adoptive admissions is straightforward: Where a party is confronted with an accusatory statement which, under the circumstances, a reasonable person would challenge, and the party remains silent or responds equivocally, the accusation and the reply may be admissible on the theory that the party's response amounts to an admission of the truth of the accusation" (quotation and citation omitted). <u>Commonwealth</u> v. <u>Braley</u>, 449 Mass. 316, 320-321 (2007). See Mass. G. Evid. § 801(d)(2)(B) (2022). At trial, the Commonwealth presented the defendant's statements in telephone calls with the victim on April 3 and April 6, 2015, as adoptive admissions to hitting her in the face and breaking her nose.[15] Trial counsel did not object to the introduction of the

---

[15] In the first call, the defendant told the victim, "you can't be talking on the phone like this, baby," in response to her statement, "you fucking knocked me right in the nose." The second challenged conversation contained the following exchange:

<u>Victim</u>: "No it's not, but you broke my nose."

<u>Defendant</u>: "Okay."

<u>Victim</u>: "Plain and simple."

<u>Defendant</u>: "Okay."

calls or the Commonwealth's theory.  In his motion for a new trial, the defendant claimed that counsel was ineffective because his statements were not adoptive admissions.  It was within the  judge's discretion to conclude that the defendant's response, "Okay," to the victim's statement that he had broken her nose and his statement, "I'm not going to really get into this because we're on the phone," when she referred to her need for surgery to repair the broken nose, were admissible as adoptive admissions by the defendant.  Because the calls were properly admitted at trial, it was not ineffective for counsel to fail to object to them.  See Commonwealth v. McWilliams, 473 Mass. 606, 615 (2016) (counsel not ineffective for failing to file motion to suppress that would have been unsuccessful); Commonwealth v. Leng, 463 Mass. 779, 783 (2012) ("An objection to such properly admitted evidence would not likely have been successful.  Counsel's omission, therefore, does not constitute ineffective assistance of counsel").

C.  Additional objections.  The defendant further argues that counsel was ineffective for failing to object to the

---

Victim:  "I had to go into surgery."

Defendant:  "Right, and I'm not going to really get into this because we're on the phone here. . . ."

admission of a portion of his April 11, 2015 telephone call with the victim about the October 2014 incident in which he broke the victim's nose.[16]  He contends that the victim's statements were irrelevant because that incident did not involve sexual assault charges; he also claims that they contained multilevel hearsay and were unduly prejudicial.  We disagree.  The conversation was admissible for the nonhearsay purpose of showing the defendant's state of mind, the victim's state of mind, and the nature of their relationship.  See Commonwealth v. Javier, 481 Mass. 268, 281 (2019) ("evidence may be relevant if it only 'throw[s] light' on an issue" [citation omitted]); Commonwealth v. Cruzado, 480 Mass. 275, 280 (2018) ("out-of-court statement not offered for its truth is not hearsay").  Moreover, the defendant's claim of undue prejudice is belied by his acquittal on the relevant charge of witness intimidation.  See Duffy, 62 Mass. App. Ct. at 923.

---

[16] During the call, the victim indicated that she no longer wished to speak to the defendant's attorney because she was concerned that her statement that "we hit each other" would be "use[d] against [her] in court."  In response, the defendant stated, "[the attorney] told me a lot of stuff that you said about me . . . .  You told her a lot of other stuff, too. . . . You know, it's the same kind of things that you told my parents, that -- that, you know, that you make people believe that I'm using drugs all the time and that when I use drugs that I want to rape you, so.  And that's what you told my attorney."

Lastly, the defendant argues that his attorney should have objected to the admission of telephone calls on September 4 and 5, 2015, between the defendant and his father because the calls contained inadmissible opinions expressed by his father.[17]  We are not persuaded.  In both calls, the father's statements were relevant and admissible to provide context to the defendant's admissions during the same conversation.  See Commonwealth v. Mullane, 445 Mass. 702, 711 (2006) (statement offered to provide context for conversation between detective and third party); Mejia, 88 Mass. App. Ct. at 238.  Moreover, the jury's verdicts acquitting the defendant on five of the charges against him

---

[17] In the first call, the father stated that the defendant "put[] [himself] in a worse position" by calling the victim and "running."

The father's statements in the second call were more extensive:

"I won't believe either side 100 percent . . . .  Her story is consistent. . . .  What she's saying is that is what happened.  She's not going to lie about it, you know. . . . I've told you, you know, what she says and what you say and they're completely different. . . .  And that's why we have told [sic] I think you need some help.  You need some counseling. . . .  You know, she consistently says that you take drugs and that's not that hard to believe. . . .  It means that you're not in your right mind at those times. . . .  I try and give you my best advice . . . and what you've done is ignore these things and get deeper and deeper in.  You get yourself so deep in I can't help you anymore. . . .  But you're trying to save [a marriage] that's not worth saving. . . .  You tell me . . . we're in such love.  That is not love, Bobby.  I hate to tell you."

suggest that any unfair prejudicial effect of that evidence did not outweigh its probative value. See Commonwealth v. Walker, 442 Mass. 185, 201 (2004) (no indication that jury improperly applied evidence where defendant acquitted of charge to which evidence did not pertain). Because the statements were admissible, counsel was not ineffective for failing to object to their admission. See Leng, 463 Mass. at 783.

ii. Prosecutor's closing argument. The defendant asserts that trial counsel should have objected to various portions of the prosecutor's closing argument. First, he contends that two statements by the victim to the defendant used in the prosecutor's closing -- that an associate of the defendant's attorney told "her what to say . . . to get the charges dropped" and that she was unable to "breathe through one side of [her broken] nose" -- were hearsay, and that the prosecutor improperly argued them for their truth. This argument fails because the defendant did not object to the admission of those statements, and therefore they were admitted without limitation and could be argued accordingly. See Carmona, 428 Mass. at 271 ("Hearsay, once admitted, may be weighed with the other evidence, and given any evidentiary value which it may possess" [citation omitted]).

Next, the defendant claims that the prosecutor misstated evidence by arguing that a particular medical record showed that

the victim was compliant with her mental health medications except when the defendant took them for his own use.  We are satisfied that the record to which the prosecutor referred supported her argument.

The defendant further asserts that the prosecutor improperly stated that there was no evidence of the victim taking drugs that altered her memory or perception of the 2015 reported abuse.  The victim was impeached on cross-examination with a prior statement that she had ingested Klonopin and was "in a blackout" the day of the incident, but there was no substantive evidence that she took her medications that day.  See Commonwealth v. Mandeville, 386 Mass. 393, 400 (1982) ("It is well established that a witness may explain, modify, or correct damaging testimony that was elicited during cross-examination").

Finally, the defendant claims that the prosecutor made a knowingly false statement when she argued, "Nothing that this defendant has said in a call or a letter about his version of events can explain the marks on [the victim] from that incident or from any of the other incidents."[18]  Viewing the prosecutor's statement in the context of the entire closing, however, the

---

[18] The defendant stated during a telephone call that the victim caused her own injuries by punching herself in the face and smashing her head against a floor, a mirror, and a wall.

prosecutor was not denying that the defendant had offered explanations for the victim's injuries, but rather was suggesting that his explanations were implausible. See Commonwealth v. Hoime, 100 Mass. App. Ct. 266, 279 (2021) (no impropriety in prosecutor's argument to effect that defendant's version of events "didn't make any sense").

In sum, we agree with the judge's conclusion that there was nothing improper in the prosecutor's argument. Where there was no error in the prosecutor's closing, it is axiomatic that there was no basis for trial counsel to object to it. We therefore conclude that his failure to do so was not ineffective. Furthermore, even if any of the challenged portions of the argument were improper, any risk that the defendant was prejudiced as a result of those flaws was obviated by the instructions to the jury regarding the limited purposes of closing arguments. See Commonwealth v. Reyes, 483 Mass. 65, 77 (2019) (no miscarriage of justice arising from prosecutor's closing where defense counsel did not object, judge provided general instruction that closing arguments were not evidence, and relevant statement "was discussed only in passing").

iii. Medical records and testimony. The defendant further contends that trial counsel was ineffective for not moving to redact certain medical records or object to improper hearsay testimony of medical personnel. We agree that the parts of the

medical records describing incidents as "assaults" and containing statements from the victim that identified the defendant as the perpetrator, as well as similar information imparted in the testimony of medical providers, were objectionable.  See Commonwealth v. Dargon, 457 Mass. 387, 396 (2010) (printed language on SANE forms "such as 'assault' and 'assailant'" should be redacted); Commonwealth v. Arana, 453 Mass. 214, 231 (2009) ("a patient's statement of . . . by whom [injuries were] inflicted, generally is not admissible . . . even if made to a physician").

Although this showing satisfies the first prong of the Saferian test, the defendant's argument falters on the test's second prong.  Trial counsel's strategy was to discredit the victim as an untruthful person.  To that end, he extensively cross-examined the victim on the various versions of events she provided to police, offered medical records showing that the victim had "lied" to hospital staff, and forcefully argued to the jury that "[the victim] lied to everyone she's spoken to." Because the defense focused on the victim's credibility rather than the form or details of her complaints about the defendant's conduct, trial counsel's failure to object to evidence that the victim reported that the defendant had abused and raped her did not prejudice the defendant.  See Commonwealth v. Medeiros, 456 Mass. 52, 62 (2010) (counsel not ineffective despite failure to

seek redaction of medical records that named defendant and contained "sexual assault" diagnosis where defense was that victim fabricated incident). That the defense was at least partially successful -- the jury acquitted the defendant of several counts of sexually assaulting the victim -- bolsters our conclusion. See Commonwealth v. Kolenovic, 471 Mass. 664, 674 (2015) (in context of ineffective assistance claim, test is one of "reasonableness [not] perfection").

iv. Police testimony. Finally, the defendant argues that trial counsel was ineffective for failing to object to hearsay testimony from a police detective. The detective testified that in June 2015 a patrol officer found the victim suffering from head trauma and medical personnel later treated her for "a temporal fracture." He also verified that the victim reported assaults in August 2008, February 2011, October 2014, June 2015, and July 2015, and that there were police reports pertaining to those incidents. Absent a showing of relevancy not made here, such testimony was inadmissible. See Commonwealth v. Stuckich, 450 Mass. 449, 457 (2008) (unnecessary and improper to describe investigative process in sexual assault trial). We agree that trial counsel therefore should have objected to it. See Commonwealth v. Sullivan, 478 Mass. 369, 376 (2017) (use of hearsay testimony from police "carefully circumscribed" and is

admissible only if police knowledge is relevant to issue in case).

Once again, however, the defendant's ineffective assistance claim fails for lack of any showing that he was prejudiced by counsel's error. The defendant did not dispute at trial that the victim was injured or that she made reports to police. Instead, he attacked her truthfulness regarding how the injuries occurred and whether the assault allegations were fabricated. The detective's testimony was brief, undetailed, and cumulative of other evidence. We discern no prejudice from its admission. See Commonwealth v. Barbosa, 463 Mass. 116, 127, 129-130 (2012) (hearsay testimony from detective should not have been admitted but no prejudice to defendant because admitted testimony was cumulative).

3. Conclusion. We affirm the judgments and the orders denying the defendant's postconviction motion for discovery and funds and motion for a new trial.

So ordered.